**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHLOMO KLEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PINTEREST, INC., BENJAMIN SILBERMANN, and TODD MORGENFELD,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Shlomo Klein ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, the investigation conducted by Plaintiff's counsel, which includes without limitation: (a) review and analysis of regulatory filings made by Pinterest, Inc. ("Pinterest" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued and disseminated by Pinterest; and (c) review of other publicly available information concerning Pinterest.

**NATURE OF THE ACTION**

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Pinterest securities between February 4, 2021 and April 27, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Pinterest operates a platform that purports to provide inspiration for its users' lives. Monthly active users ("MAUs") are the number of Pinterest users who interact with Pinterest at least once during the 30-day period ending on the date of measurement.

3.      On April 27, 2021, after the market closed, Pinterest announced its first quarter 2021 financial results and reported that global monthly active users grew only 30% year-over-year to 478 million, a decline from the prior quarter's 37% year-over-year growth. During a conference call held the same day, Pinterest's Chief Executive Officer ("CEO") stated that "[a]s pandemic lockdowns were eased in some parts of the world during mid-March, we began to see signs of less engagement and user growth on Pinterest."

4.      On this news, the Company's share price fell $11.25 per share, or 14.5%, to close at $66.33 per share on April 28, 2021, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) user growth was already slowing; (ii) as a result, the Company expected user engagement to slow in the second quarter of 2021; and (iii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this Judicial District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Pinterest securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Pinterest is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California. Pinterest's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "PINS."

13. Defendant Benjamin Silbermann ("Silbermann") was the Company's CEO at all relevant times.

14. Defendant Todd Morgenfeld ("Morgenfeld") was the Company's Chief Financial Officer at all relevant times.

15. Defendants Silbermann and Morgenfeld (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were

then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

16. Pinterest and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. Pinterest operates a platform that purports to provide inspiration for its users' lives. MAUs are the number of Pinterest users who interact with Pinterest at least once during the 30-day period ending on the date of measurement.

### Materially False and Misleading Statements Issued During the Class Period

18. The Class Period begins on February 4, 2021, when Pinterest announced its fourth quarter and full year 2020 financial results in a press release that stated, in relevant part:

- Q4 revenue grew 76% year over year to $706 million. 2020 revenue grew 48% year over year to $1,693 million.

- Global Monthly Active Users (MAUs) grew 37% year over year to 459 million.

- GAAP net income (loss) was $208 million and $(128) million for Q4 and 2020, respectively. Adjusted EBITDA was $299 million and $305 million for Q4 and 2020, respectively.

"We welcomed over 100 million additional monthly active users to Pinterest in 2020, more than any other year in our history, and now we reach more than 450 million monthly active users around the world. I'm proud of our company and the inspiration we've been able to bring to so many lives during a trying year," said Ben Silbermann, CEO and co-founder, Pinterest.

19. That same day, Pinterest held a conference call with analysts and investors to discuss the financial results. During the call, Defendant Morgenfeld provided an outlook for the first quarter of 2021, stating:

> Turning to our preliminary outlook for Q1, we expect to grow revenue in the low 70s-percent range in Q1. As we think about Q1 and the full year, we expect positive trends from our investments in ad tools like shopping and automation, and sales coverage expansion to continue. We plan to expand our international coverage further in existing geographies and also expand monetization into Latin America in the first half of the year.
>
> We also want to be mindful that we'll be navigating a fluid landscape. We're keeping an eye on a few things. First, the impact of COVID on users and engagement. Since COVID appeared, we know that more and more people have the Pinterest to find inspiration. ***We could see some of that reverse if restrictions ease.***

(Emphasis added.)

20. Also on February 4, 2021, Pinterest filed its annual report on Form 10-K for the period ended December 31, 2020, affirming the previously reported financial results. Regarding user growth, the Company stated, in relevant part:

> ***Our ecosystem of Pinners and advertisers depends on our ability to attract, grow, retain and engage our user base. If we fail to add new Pinners or retain current Pinners, or if Pinners engage less with us, our business, revenue and financial results could be harmed.***
>
> We must continue to attract, grow, retain and engage our users on our platform, who we call Pinners. Our active Pinners may not continue to grow, and may decline.
>
> If current and potential Pinners do not perceive their experience with our service to be useful, or the content that we serve to them to be relevant to their personal taste and interests, we may not be able to attract new Pinners, retain existing Pinners or maintain or increase the frequency and duration of their engagement. In addition, if our existing Pinners do not continue to utilize our service or our user base does not continue to grow, we may be required to incur significantly higher marketing expenses than we currently anticipate to add new Pinners or retain current Pinners. Pinner engagement may also fluctuate depending on factors beyond our control, such as changes to daily life resulting from the COVID-19 pandemic. Although we have seen higher engagement from Pinners during the COVID-19 pandemic, we may see lower levels of Pinner engagement once the effects of the COVID-19 pandemic have subsided.

21. On March 2, 2021, Defendant Morgenfeld participated in the Virtual Morgan Stanley Technology, Media and Telecom Conference, during which he stated:

> COVID, obviously, played a role in the trend. But given the fluid situation, it's really hard to provide a lot of color on user growth in 2021. And the way I think about it, there are some factors that impact user growth this quarter and probably throughout 2021, it's – the

stickiness of that COVID cohort is still kind of unknown. These users have only been around for a couple of quarters, and so we're a few quarters, so we're monitoring all that very carefully.

And the COVID trends can change. With shutdowns and reopenings, that has an impact on monthly active users and by extension are typical seasonal patterns. It really not held through COVID. And if vaccines allow people to return to pre-COVID behaviors, that could adversely affect our user and engagement growth. What we've seen generally is that as restrictions become more stringent, we've seen an uptick in users and engagement. And as restrictions have loosened, we've seen it move in the other direction.

22. The above statements identified in ¶¶ 18-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) user growth was already slowing; (ii) as a result, the Company expected user engagement to slow in the second quarter of 2021; and (iii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Emerges**

23. On April 27, 2021, after the market closed, Pinterest announced its first quarter 2021 financial results and reported that global MAUs grew only 30% year-over-year to 478 million, a decline from the prior quarter's 37% year-over-year growth. In a press release, the Company stated, in relevant part:

- Q1 revenue grew 78% year over year to $485 million.

- Global Monthly Active Users (MAUs) grew 30% year over year to 478 million.

- GAAP net loss was $(22) million for Q1. Adjusted EBITDA was $84 million for Q1.

\* \* \*

**Guidance**

We continue to navigate uncertainty given the ongoing COVID-19 pandemic and other factors. Our current expectation is that Q2 revenue will grow around 105% year over year. ***In Q2, we expect global MAUs to grow in the mid-teens and US MAUs to be around flat***

*on a year-over-year percentage basis.* Finally, we expect sequential operating expense growth to accelerate in Q2 as we continue to ramp investments in our long-term initiatives and growth drivers.

(Emphasis added.)

24. During a conference call held the same day, Pinterest's CEO stated that "[a]s pandemic lockdowns were eased in some parts of the world during mid-March, we began to see signs of less engagement and user growth on Pinterest."

25. On this news, the Company's share price fell $11.25 per share, or 14.5%, to close at $66.33 per share on April 28, 2021, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Pinterest securities during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Pinterest's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Pinterest shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Pinterest or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Pinterest; and

    (c) to what extent the members of the Class have sustained damages and the proper measure of damages.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

32. The market for Pinterest's securities was open, well-developed, and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose,

Pinterest's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Pinterest's securities relying upon the integrity of the market price of the Company's securities and market information relating to Pinterest, and have been damaged thereby.

33. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Pinterest's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Pinterest's business, operations, and prospects as alleged herein.

34. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pinterest's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

35. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36. During the Class Period, Plaintiff and the Class purchased Pinterest's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

37. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Pinterest, their control over, and/or receipt and/or modification of Pinterest's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pinterest, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE
(FRAUD-ON-THE-MARKET DOCTRINE)**

38. The market for Pinterest's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Pinterest's securities traded at artificially inflated prices during the Class Period. On February 16, 2021, the Company's share price closed at a Class Period high of $89.15 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Pinterest's securities and market information relating to Pinterest, and have been damaged thereby.

39. During the Class Period, the artificial inflation of Pinterest's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pinterest's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Pinterest and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40. At all relevant times, the market for Pinterest's securities was an efficient market for the following reasons, among others:

(a) Pinterest shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Pinterest filed periodic public reports with the SEC and/or the NYSE;

(c) Pinterest regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Pinterest was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain

customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41. As a result of the foregoing, the market for Pinterest's securities promptly digested current information regarding Pinterest from all publicly available sources and reflected such information in Pinterest's share price. Under these circumstances, all purchasers of Pinterest's securities during the Class Period suffered similar injury through their purchase of Pinterest's securities at artificially inflated prices and a presumption of reliance applies.

42. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

43. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ

materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Pinterest who knew that the statement was false when made.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

44. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Pinterest's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Pinterest's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Pinterest's financial well-being and prospects, as specified herein.

48. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Pinterest's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Pinterest and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of

these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Pinterest's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Pinterest's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Pinterest's securities during the Class Period at artificially high prices and were damaged thereby.

52. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members

of the Class and the marketplace known the truth regarding the problems that Pinterest was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Pinterest securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of Pinterest within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| Dated:  June 3, 2021 | Respectfully submitted, |
| | POMERANTZ LLP |
| | */s/ Jennifer Pafiti* |
| | Jennifer Pafiti (SBN 282790) |
| | 1100 Glendon Avenue, 15th Floor |
| | Los Angeles, California 90024 |
| | Telephone: (310) 405-7190 |
| | jpafiti@pomlaw.com |
| | |
| | POMERANTZ LLP |
| | Jeremy A. Lieberman |
| | (*pro hac vice* application forthcoming) |
| | J. Alexander Hood II |
| | (*pro hac vice* application forthcoming) |
| | 600 Third Avenue, 20th Floor |
| | New York, New York 10016 |
| | Telephone: (212) 661-1100 |
| | Facsimile: (212) 661-8665 |
| | jalieberman@pomlaw.com |
| | ahood@pomlaw.com |
| | |
| | *Attorneys for Plaintiff* |